UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MAXIMILIANO COUVILLIER III, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DILLINGHAM & ASSOCIATES, ) <br> ) <br> Defendant. ) <br> _____ ) | 2:14-cv-00482-RCJ-NJK <br><br> **ORDER** |

This case arises out of an attempt to collect delinquent homeowner association ("HOA") dues. Pending before the Court is a Motion to Dismiss (ECF No. 13) for lack of personal jurisdiction. For the reasons given herein, the Court denies the motion.

## I. FACTS AND PROCEDURAL HISTORY

Sometime before February 2014, Plaintiff Maximiliano Couvillier III incurred debt for unpaid HOA dues for a property located in California. (*See* Compl. ¶ 19, Apr. 1, 2014, ECF No. 1). That debt, the validity of which Plaintiff does not admit or deny, was later transferred to Defendant Dillingham & Associates ("Dillingham") for collection. (*See id.* ¶¶ 20–21). On or about February 6, 2014, Dillingham sent Couvillier a letter to Couvillier's Nevada address in an attempt to collect the debt. (*Id.* ¶ 22–23). Couvillier sued Dillingham in this Court, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. ch. 598. Couvillier has

1  styled the action as a class action.  Dillingham has moved to dismiss for lack of personal
2  jurisdiction.
3  **II.     LEGAL STANDARDS**
4        A defendant may move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P.
5  12(b)(2).  Jurisdiction exists if: (1) provided for by law; and (2) the exercise of jurisdiction
6  comports with due process. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir.
7  1980).  When no federal statute governs personal jurisdiction, a federal court applies the law of
8  the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Where a forum
9  state's long-arm statute provides its courts jurisdiction to the fullest extent of the Due Process
10 Clause of the Fourteenth Amendment, such as Nevada's does, *see Arbella Mut. Ins. Co. v. Eighth*
11 *Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065), a court
12 need only apply federal due process standards, *see Boschetto*, 539 F.3d at 1015.[1]
13       There are two categories of personal jurisdiction: general jurisdiction and specific
14 jurisdiction.  Traditionally, general jurisdiction exists over a defendant who has "substantial" or

---

[1] Nevada's long-arm rule restricts extra-territorial jurisdiction to the limits of both the U.S. and Nevada Constitutions. *See* Nev. Rev. Stat. § 14.065(1).  However, Nevada's due process clause is textually identical to the federal clause in relevant respects, *see* Nev. Const. art. 1, § 8(5), and the Nevada Supreme Court reads the state clause as coextensive with the federal clause, *see, e.g.*, *Wyman v. State*, 217 P.3d 572, 578 (Nev. 2009).  Until 1868, when the Fourteenth Amendment was adopted, the Due Process Clause of the Fifth Amendment did not apply to the states. *See Barron v. City of Baltimore*, 32 U.S. 243, 250–51 (1833) (Marshall, C.J.).  The Declaration of Rights that comprises Article I of the Nevada Constitution, which was adopted in 1864, was included in order to impose certain restrictions on the State of Nevada that were already imposed against the federal government under the Bill of Rights, and the Nevada Supreme Court has not interpreted the protections of the Declaration of Rights to exceed the scope of their federal counterparts. Michael W. Bowers, *The Sagebrush State* 43–44 (3rd ed., Univ. Nev. Press 2006); Michael W. Bowers, *The Nevada State Constitution* 24 (1993).  During the Nevada Constitutional Convention in 1864, the Due Process Clause of Article I was not debated, although several other provisions of Article I, and even Section 8, were heavily debated. *See generally* Andrew J. Marsh, Official Report of the Debates and Proceedings of the Constitutional Convention of the State of Nevada (Frank Eastman pr., 1866), *available at* http://books.google.com.

"continuous and systematic" contacts with the forum state such that the assertion of personal jurisdiction over her is constitutionally fair even where the claims are unrelated to those contacts. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). A state court has general jurisdiction over the state's own residents, for example.

The Supreme Court recently clarified that general personal jurisdiction exists only where a company is at "home" in the forum state. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760–62 (2014). The Court noted that "continuous and systematic" contacts alone are not enough in-and-of-themselves to create general jurisdiction. *See id.* The quoted phrase was in fact first used in the context of *specific* jurisdiction as conjunctive with the "arises-out-of" requirement. *See id.* at 761 (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). "Accordingly, the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires Operations S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (alteration in original). So the company must be at "home" in the forum state for there to be general jurisdiction. Where this is not the case, a plaintiff must rely on specific jurisdiction, i.e., the action must have arisen out of contacts with the forum state.

Even where there is no general jurisdiction over a defendant, specific jurisdiction exists when there are sufficient minimal contacts with the forum state such that the assertion of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken*, 311 U.S. at 463). The standard has been restated using different verbiage. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that

there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (citing *Int'l Shoe Co.*, 326 U.S. at 319)); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (citing *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 97–98 (1978))).  From these cases and others, the Ninth Circuit has developed a three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

> The plaintiff bears the burden on the first two prongs.  If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable.  But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.

*Id.* (citations omitted).  The "purposeful direction" option of the first prong uses the "*Calder*-effects" test, under which "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc)).  The third prong is a seven-factor balancing test,

under which a court considers:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 107, 1112 (9th Cir. 2004)).

### III. ANALYSIS

There is no general personal jurisdiction over Dillingham, a California law firm, in Nevada, because Dillingham is not alleged to be "at home" in Nevada, but is only alleged to "do[] business" in Nevada, however extensively. *See Daimler AG*, 134 S. Ct. at 761.  There may be specific personal jurisdiction over Dillingham in Nevada if this action arises out of minimal contacts of Dillingham with Nevada.

The Court finds that Couvillier has sufficiently alleged that the present action arises out of the purposeful direction of Dillingham's activities to the State of Nevada.  That is, Couvillier alleges, and Dillingham does not appear to deny, that Dillingham sent a letter attempting to collect a debt from California to Couvillier in Nevada. (*See* Compl. ¶¶ 22–23).  Couvillier alleges that the letter violated the FDCPA and NDTPA in several respects. (*See id.* ¶¶ 24–34).  Dillingham of course denies any violations, but whether the allegations are substantively sufficient is not directly relevant at this stage.  So long as the factual allegations relating to the contacts with the forum are sufficient, the Court must determine the personal jurisdiction issue in favor of Plaintiff.  Dillingham remains free to move to dismiss for failure to state a claim.  Couvillier has satisfied his burden to show that the first two prongs of the personal jurisdiction test are met.  The mailing of the collection letter to Nevada was an intentional act expressly aimed at Nevada (allegedly) causing harm that Dillingham knew or should have known would be

felt in Nevada, and the present claims arise directly out of that act.

In its motion, Dillingham relies primarily on cases finding that out-of-state legal representation in out-of-state matters does not generally constitute minimum contacts between a law firm and its client's state in cases where a client sues his out-of-state law firm for malpractice or breach of fiduciary duty.  In the authoritative case cited, a California client–plaintiff had contacted the Florida law firm–defendant in Florida to represent him in a criminal case in Florida, and the Florida firm had never solicited the plaintiff's business in California. *See Sher v. Johnson*, 911 F.2d 1357, 1362–63 (9th Cir. 1990) ("Out-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state.").  Here, by contrast, Dillingham is alleged to have mailed a letter violating both federal and Nevada statutes to Couvillier in Nevada, and Dillingham is alleged to have initiated that contact between itself and the Nevada Plaintiff.  The parties do not appear to dispute that it is not the case that Couvillier ever initiated contact with Dillingham in California from Nevada.

The remaining question is whether it would be reasonable to maintain personal jurisdiction over Dillingham in Nevada under the circumstances.  Dillingham bears the burden of "present[ing] a compelling case" that it would be unreasonable. *See Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).  Dillingham has not borne its burden.  Dillingham argues that it would be unreasonable to subject it to personal jurisdiction in Nevada because it has sent seventy-three similar letters from California, and only three of them were sent to addresses outside of California, including the letter sent to Couvillier in Nevada.  But the percentage of a plaintiff's similar activities directed to a given forum is irrelevant to specific jurisdiction.  That analysis used to be relevant to general jurisdiction and the citizenship of a corporation (before *Daimler AG* and *Hertz Corp.*, respectively).  But for the

purposes of specific jurisdiction, it has only ever mattered whether a defendant has sufficiently injected his activities into a forum in the particular case out of which an action arises. As another judge of this District once ruled in a reported opinion in a FDCPA case, a single contact with a forum is sufficient for the courts of that forum to assert jurisdiction over a defendant where the contact is purposeful and the cause of action arises precisely out of that contact:

> [I]t is well-settled that a single contact with the forum state, not involving the physical presence of the defendant, can be a sufficient basis upon which to establish jurisdiction over the defendant. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957). This is not a case where the communication involved is merely a means of conducting some other primary business within the forum. Here, the Robinson Defendants' "communications in the forum state . . . are the precise subject matter of this action pursuant to the FDCPA." *Russey v. Rankin*, 837 F. Supp. 1103, 1105 (D.N.M. 1993) (quoting *Bailey v. Clegg, Brush & Assoc., Inc.*, 1991 WL 143461 (N.D. Ga. 1991)). Thus, under the allegations contained in Count Five of Plaintiff's complaint, the Court finds that the Robinson Defendants purposefully availed themselves of the privilege of conducting activities in this forum, that Count Five arises out of the Robinson Defendant's forum related activities, and that the exercise of jurisdiction is reasonable. *See Sluys v. Hand*, 831 F. Supp. 321, 324 (S.D.N.Y. 1993) (finding personal jurisdiction over nonresident defendant in an FDCPA action where defendant sent demand letter into forum); *Russey*, 837 F. Supp. at 1105 (same).

*Paradise v. Robsinson & Hoover*, 883 F. Supp. 521, 525–26 (D. Nev. 1995) (Pro, J.) (upholding personal jurisdiction over an Oklahoma defendant who had sent a single collection letter to a plaintiff in Nevada).

The Court finds that there is no compelling argument for rejecting personal jurisdiction over Dillingham in this case. Dillingham purposely injected itself into the State of Nevada by sending a collection letter to a Nevada resident in Nevada. Defending in Las Vegas will not be meaningfully more burdensome for Dillingham than Defending in southern California. There is no conflict with the sovereignty of California, as no choice of law issues are implicated as in a common law contract or tort case. Nevada's interest in adjudicating the dispute is greater than California's, because although the FDCPA claim is federal, a similar Nevada statute designed to protect Nevada debtors is at issue. Neither forum would dispose of the case with significantly

more efficiency than the other. Couvillier's interest in convenient and effective relief is for the same reason not powerfully implicated. Finally, there exists an alternative forum in the federal courts of California. In summary, none of the factors weighs very strongly toward a finding of unreasonableness.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 13) is DENIED.

IT IS SO ORDERED.

Dated this 23rd day of July, 2014.

      _____
                    ROBERT C. JONES
                United States District Judge